UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| SHAWN JOSEPH FIELDS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 17-327-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | **MEMORANDUM OPINION** |
| Commissioner of the Social Security | ) | **AND ORDER** |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for review of cross-motions for summary judgment filed by Plaintiff Shawn Joseph Fields ("Fields" or the "Claimant") and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration ("the Commissioner"). [Record Nos. 13, 15] Fields argues that the Administrative Law Judge ("ALJ") assigned to his case erred in concluding that he was not disabled within the meaning of the Social Security Act "Act"). Specifically, he asserts that the ALJ failed to properly evaluate his subjective complaints of pain and that the ALJ's decision was not supported by substantial evidence. Fields asks this Court to direct the Commissioner to award him benefits or, alternatively, remand this matter for further consideration before a new ALJ. The Commissioner contends that the ALJ properly evaluated the evidence and that the ALJ's decision should be affirmed because it is supported by substantial evidence.

The Commissioner's motion will be granted and Fields' motion will be denied for the reasons that follow.

## I. Procedural History

Fields filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act on February 3, 2015.[1] [*See* Administrative Transcript, hereinafter "Tr.," 156.] The application was denied initially and on reconsideration. Fields then requested an administrative hearing before an ALJ. [Tr. 82, 93, 101] He appeared before ALJ Donald Rising at a hearing in Middlesboro, Kentucky in December 2016. [Tr. 27-42] ALJ Rising denied benefits in a written decision on January 25, 2017, which the Appeals Council affirmed. [Tr. 8-21, 1-4]

As a result of the foregoing, the Claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Fields was forty-six years old and lived with his wife at the time of his application for SSI. [Tr. 20, 31] He claimed that he became unable to work on January 15, 2012, because of problems with his knees, depression, and a limited education. [Tr. 212-13] Fields alleged that he quit school after the fourth grade is unable to read or write more than his name. [Tr. 31, 212]

He worked as a stocker at a liquor store from 2008 through 2012. [Tr. 198] During that time Fields, loaded trucks and stocked items weighing up to 50 pounds. This required walking, standing, kneeling, crouching, crawling, reaching, and handling, grabbing, and

---

[1] The Claimant states in his supporting memorandum that he applied for disability insurance benefits ("DIB") under Title II of the Act. However, there is no indication in the Administrative Transcript that he ever applied for such benefits.

grasping large objects. [Tr. 199] He reports that he can no longer work due to pain in his knees and ankles and that he mostly watches television. [Tr. 204-08, 230]

Pam Sheffield, ARNP, treated Fields for left knee, ankle, and foot pain beginning in October 2014. [Tr. 321, 324] She ordered x-rays, prescribed prednisone, and referred Fields to Jamal Bazzi, M.D. Bazzi evaluated Fields on February 2, 2015. [Tr. 328] He noted that Fields had tenderness over the medial joint line of his left knee and on his left ankle. [Tr. 329] An MRI of Fields' left ankle revealed a small fluid collection posterior to the talus bone and intact ankle tendons and collateral ligaments. [Tr. 330] An x-ray of the left foot showed mild degenerative changes and large calcaneal spurs. [Tr. 449] X-rays of Fields's knees, however, were normal. [Tr. 415-16] Bazzi administered a steroid injection to the left knee and prescribed physical therapy and Voltaren gel for the ankle. [Tr. 335] Fields completed six physical therapy visits, but was discharged because he had failed to benefit from this treatment. [Tr. 366]

Sheffield also treated Fields for low back pain in July 2015. [Tr. 435] She prescribed anti-inflammatory medications and ordered an MRI. [Tr. 436, 441] Radiologist Gregory Tiu, M.D., reported that the MRI showed signs of degenerative disc disease at L5-S1, with mild diffuse annular bulging. [Tr. 446] He indicated that there were no signs of spinal stenosis or a herniated nucleus pulposis. *Id.* Sheffield referred Fields to neurosurgeon James Bean, M.D., who diagnosed Fields with a "far lateral disc herniation, L3-L4, left" based on the same MRI. [Tr. 478] Bean remarked that Fields would "try to endure [it] conservatively since he has a fear of surgery." [Tr. 478]

State agency consultant Kathleen Monderewicz, M.D., examined Fields on March 25, 2015. [Tr. 354] At the time of this examination, Fields complained of chronic knee pain, as

well as left ankle and foot pain, but reported no history of having been injured. Fields was five feet, nine inches tall and weighed 295 pounds. [Tr. 352] Monderewicz reported that Fields had an antalgic gait, but did not use an assistive device. Both of Fields' knees were tender at the joint lines and exhibited crepitus and patellar clicking, but the lateral and cruciate ligaments were all intact and stable. [Tr. 353-54] Fields also complained of tenderness around his left ankle joint, as well, but no ligamentous laxity was detected. [Tr. 354]

Fields was able to balance on his right lower extremity, but could not stand on the left leg alone. He also could not perform heel or toe-walking on his left leg and could not squat fully due to pain. [Tr. 355] His left lower extremity strength was inhibited by pain, but there was no evidence of muscle atrophy. Monderewicz concluded that prolonged sitting, standing, walking, squatting, kneeling, and crawling were limited due to Fields' chronic left knee and ankle pain and decreased range of motion. She further determined that bending and stooping were limited due to back pain, as were heavy lifting and carrying. Monderewicz reported that Fields had some limitations in the ability to raise his arms overhead and that he should avoid climbing and unprotected heights because of his balance limitations. [Tr. 356] Finally, Monderewicz concluded that Fields had mild difficulty with fine manipulation due to a slight action tremor in both hands.

State agency consultant Michele Amburgey, M.A., examined Fields on April 14, 2015. [Tr. 360] Fields drove himself to the examination. He advised Amburgey that he was depressed "on occasion." [Tr. 361] Amburgey administered the WAIS-IV, an instrument that assesses intelligence. Fields scored "extremely low" in the areas of verbal comprehension, working memory, and processing speed. [Tr. 361-62] He scored "borderline" in the area of

perceptual reasoning. [Tr. 361] Fields' full-scale IQ was reported as 59, which falls into the extremely-low range or mild range of mental retardation. [Tr. 362]

Amburgey also administered the WRAT-4, which is a test of academic achievement skills. Fields' reading and spelling abilities were reported to be within the fourth grade range, while his math scores were at the first-grade level. [Tr. 362] Amburgey observed that Fields was able to comprehend and follow basic instructions. She noted that he interacted with her in a polite manner, but she believed he would have difficulty with in-depth social interactions. Further, she concluded that Fields would have difficulty with complex tasks due to his limited intellectual functioning. [Tr. 362]

The Cooperative Disability Investigations Unit ("CDI") opened an investigation on April 29, 2015, after receiving a referral that Fields had misrepresented his physical and mental limitations to receive SSI benefits. [Tr. 406] Investigators with the Kentucky Attorney General's Office traveled to Cumberland, Kentucky to interview Fields on June 15, 2015. [Tr. 408] Upon arriving at Fields' residence, investigators were initially unable to locate him and were in the process of interviewing a neighbor when Fields arrived, driving a pickup truck with a large extension ladder in the back. [Tr. 409] Fields parked and approached investigators after walking up a roughly-paved inclined driveway. According to the investigators' report, Fields did not limp and did not utilize any type of assistive device. [Tr. 410]

Fields was asked to read and sign an interview consent form, which he did. [Tr. 408] He voluntarily recalled and identified substantial information from memory, including: his full name; date of birth; social security number; address; telephone number; educational history; number of years married; make, model and year of two vehicles owned; and the name of his doctor, clinic, and pharmacy. [Tr. 409] The reporting investigator noted that Fields was

pleasant and cooperative and answered all questions independently and appropriately. He spoke with a normal rate and tone of voice and did not require any questions to be repeated. [Tr. 410] According to the investigator, Fields stood unassisted for approximately 25 minutes and did not complain of discomfort. At the conclusion of the interview, Fields walked about 200 feet to his residence, across a rough and poorly paved driveway, and ascended seven stairs without assistance or using the handrail. The investigator reported that Fields exhibited no signs of difficulty or distress. *Id.*

The investigators spoke to several witnesses -- including Fields' neighbor -- who described Fields as a "hard worker" who does not have steady employment but takes any kind of work he can get. [Tr. 410] The investigators also spoke with a witness at a convenience store who stated that Fields shopped in the store every day for gas and beer. She reported that Fields pumped his own gas, carried his own merchandise, and counted money without assistance. The investigators encountered individuals at a nearby restaurant who claimed to be familiar with Fields. [Tr. 411] The first witness remembered that Fields had worked at the liquor store for "a long time," and that he "seemed normal" while working there. *Id.* She did know of him having any intellectual or physical problems. A second witness at the restaurant echoed these statements, adding that she saw him in town frequently. *Id.* She said that he did not show any signs of pain or discomfort and that he seemed to be normally intelligent when carrying on a conversation. *Id.* Investigators interviewed an additional witness in a grocery store in Harlan who provided similar statements. *Id.*

The ALJ concluded that Fields had the following severe impairments: borderline intellectual functioning and degenerative disc disease. [Tr. 13] The ALJ determined, however, that neither of these impairments nor a combination of them met or medically equaled a listed

impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. [Tr. 15] After reviewing all of the evidence, the ALJ determined that Fields had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c) that

> does not require more than frequent stair climbing, stooping, kneeling, crouching, and crawling; more than frequent overhead reaching and fingering; or more than occasionally climbing ladders, ropes, and scaffolds. Mentally, he can execute simple instructions and tasks involving brief learning periods, little independent judgment, and minimal variations in routine in an environment characterized by frequent contact with coworkers and supervisors, but no more than occasional interaction with the public.

[Tr. 17] The ALJ determined that, based on this RFC, jobs existed in significant numbers in the national economy Fields could perform and, accordingly, he was not under a disability. [Tr. 21]

### III.     Standard of Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.

20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 416.920(e). If he can, he is not disabled. 20 C.F.R. §416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching his decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. Discussion

### A. The Claimant's Subjective Complaints of Pain

Fields contends that the ALJ failed to properly evaluate his credibility and subjective complaints of pain under 20 C.F.R. § 416.929 and SSR 96-7p, 1996 WL 374186 (July 2, 1996). However, SSR 16-3 superseded SSR 96-7p in March 2016, eliminating the term "credibility" from the evaluation process. 2016 WL 1119029 (March 16, 2016). Upon review of the ALJ's written decision, it is clear that he applied the appropriate two-step inquiry for evaluating Fields' subjective complaints. The ALJ first determined that Fields had medically determinable impairments that could reasonably be expected to cause the symptoms alleged. *See* 20 C.F.R. § 416.929(b); 2016 WL 1119029, at *3. [Tr. 17] Specifically, he concluded that Fields' medically determinable impairment of back pain could reasonably be expected to cause the alleged symptoms. *Id.* However, the ALJ concluded that Brock's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record.

As the ALJ explained in some detail, numerous diagnostic tests did not support the degree of limitation Fields alleged. *See* 20 C.F.R. § 416.929 (c)(2). [Tr. 18] A May 2015 x-ray of the lumbar spine revealed muscle spasm with no other abnormalities, although an MRI the following July revealed mild diffuse annular bulging without neurological involvement. [Tr. 18, 448] The consulting neurosurgeon, Dr. Bean, interpreted the MRI differently and offered surgical intervention, but Fields declined to pursue that option. [Tr. 18, 478] Subsequent medical records do not identify significant neurological or musculoskeletal abnormalities or treatment for low back pain.

The ALJ recognized that, to the extent Fields' statements regarding the limiting effects of his pain were not substantiated by objective medical evidence, he was required to consider other evidence in the record to determine whether his symptoms limited his ability to perform work-related activities. *See* 20 C.F.R. § 416.929(c)(3). [*See* Tr. 18-19.] The ALJ looked at Fields' activities of daily living; the location, duration, frequency, and intensity of his pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate the pain; treatment, other than medication, for relief of pain or other symptoms; and any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments. [Tr. 19]

And as the ALJ noted, the evidence of record contradicts Fields' claim that he quit work because of his medical conditions. [Tr. 18] Treatment notes from 2015 document Fields' report of having been laid off from work in 2012 and that he received unemployment compensation benefits. [Tr. 333, 408] Further, Fields' neighbor described him as "hard worker" in June 2015 and advised investigators that Fields does any kind of work he can get, primarily construction work and odd jobs. [Tr. 18, 410] The ALJ also pointed out that investigators observed Fields arrive home with a large extension ladder in the bed of his truck. [Tr. 18] Additionally, the ALJ reviewed Fields' pain-relief measures including use of a "heat wrap" and over the counter medications such as ibuprofen. [Tr. 19] The record indicates that Fields did not have any side effects with the use of these treatments and he did not require the use of any assistive devices.

Based on the foregoing, the ALJ's evaluation of Fields' subjective complaints was consistent with 20 C.F.R. § 416.929 and SSR 16-3p, and the ALJ reasonably determined that

the evidence did not fully support his allegations of pain. Further, the ALJ gave specific reasons for his findings and cited specific evidence in the record in support.

### B. The ALJ's Decision is Supported by Substantial Evidence

Lisa Beihn, M.D., reviewed Fields' record on behalf of the state on October 1, 2015. [Tr. 76] After reviewing the medical evidence submitted up to that date, Beihn reported that Fields could occasionally lift and/or carry 50 pounds and could frequently lift and/or carry 25 pounds. [Tr. 73] She indicated that he could sit and stand and/or walk for about six hours in an eight-hour workday. Dr. Beihn further concluded that he could occasionally climb ladders, ropes, or scaffolds, while he could frequently stoop, kneel, crawl, and climb ladders, ropes, and scaffolds. [Tr. 74] Beihn reported that Fields could reach overhead only two-thirds of the time due to decreased shoulder range of motion and could perform fingering only two-thirds of the time due to mild difficulty with fine manipulation. [Tr. 75] Finally, Beihn recommended that Fields avoid even moderate exposure to hazards such as machinery and heights due to pain and decreased balance of the left knee.

Ed Ross, Ph.D., reviewed Fields' record on behalf of the state and rendered a mental RFC on September 28, 2015. [Tr. 78] Ross concluded that Fields had the ability to understand and remember simple instructions and procedures requiring a brief initial learning period. He further reported that Fields could sustain attention, concentration, effort, and pace for simple tasks requiring little independent judgment and involving minimal variations. Ross believed that Fields could adapt adequately to situational changes with reasonable support and that he could interact frequently as needed with supervisors and peers, but no more than occasionally with the public. *Id.*

The ALJ attributed significant weight to these opinions. He properly concluded that Beihn's physical RFC was supported by the "modest medical evidence of record," including Dr. Monderewicz's clinical observations. [Tr. 20] The ALJ concluded that Ross' finding of "no more than moderate mental limitations" was consistent with Fields' lack of mental treatment and his history of effective adaptive functioning, as well as the findings of the CDI fraud investigation. The opinions of Beihn, Ross, and Monderewicz constitute substantial evidence, as reasonable minds would find them sufficient to support the ALJ's decision.

Fields argues that the ALJ failed to consider Michele Amburgey's psychological exam and the restrictions she assessed. [Record No. 13-1, pp. 14-15] This assertion is incorrect. The ALJ discussed Amburgey's opinion and assigned no weight to it because it was based largely on the claimant's subjective reports, without consideration of rebuttal evidence, which the ALJ discussed extensively in his analysis of Listings 12.05 and 12.11. [Tr. 15-16, 20] Notably, Fields had held skilled employment, and was a registered voter who held an unrestricted driver's license. [Tr. 15-16]

The opinions of a one-time consulting source are not entitled to any particular weight. Instead, they are afforded weight according to the factors set out in 20 C.F.R. § 416.917, which include: whether they are supported by objective findings; whether they are consistent with the record as a whole; and the extent of the source's relationship with the claimant. An ALJ is not under any special obligation to explain why he elected not to defer to a non-treating physician. *See Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). Accordingly, the ALJ did not err in his consideration of Amburgey's opinion.

## V. Conclusion

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Shawn Joseph Fields' Motion for Summary Judgment [Record No. 13] is **DENIED**.

2. Defendant Acting Commissioner the Social Security Administration Nancy A. Berryhill's Motion for Summary Judgment [Record No. 15] is **GRANTED**.

This 3rd day of May, 2018.

Signed By:
*Danny C. Reeves* DCR
United States District Judge